9/16/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO.: 07-25554-JAD |
| PITTSBURGH IRISH PUBS, LLC, ) | |
| ) | |
| DEBTOR. ) | CHAPTER 11 |
| ) | |
| PITTSBURGH IRISH PUBS, LLC, ) | Doc. No.: 404 |
| ) | |
| MOVANT, ) | |
| ) | Related Doc. No.: 355 |
| v. ) | |
| ) | |
| ENTERPRISE BANK, ) | |
| ARA CONSTRUCTION CORP., ) | |
| FRANK R. ZOKAITES, ) | Hearing Date: August 18, 2009 |
| STAAB & SONS, INC., ) | |
| CARL UKASIK, JR., ) | |
| ROOFING CONCEPTS, LLC, ) | Hearing Time: 10:00 A.M. |
| ALLEGHENY COUNTY, and ) | |
| MT LEBANON SCHOOL DISTRICT, ) | |
| ) | |
| RESPONDENTS. ) | |

**ORDER APPROVING (I) SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363**

This __16th__ day of ~~August~~ September 2009, on consideration of the Motion For An Order Authorizing the Debtor to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363(f) (the "Sale Motion"), after notice and hearing held on August 18, 2009 at 10:00 a.m. on said Sale Motion, the Court finds:

1. That on, or about, June 14, 2009, the Debtor, based on its reasoned business judgment, entered into a Purchase & Sale Agreement with Alex Development, LLC (the "ADPSA") to sell substantially all of the Debtor's real and personal property as more fully described in the ADPSA for One Million Two Hundred Thousand ($1,200,000.00) Dollar with the following allocation:

a. Real Property: $1,070,000; and

   b. Personal Property (FF&E): $130,000.

2. The terms of the ADPSA were negotiated in "good faith" within the meaning of 11 U.S.C. § 363(m) and at arm's-length between the Debtor and Alex Development, LLC, and that the terms of the ADPSA and the purchase price set forth therein were the highest and best offer received by the Debtor and the Bankruptcy Court.

3. That said sales hearing and sale were duly advertised as shown by proofs of publication duly filed in the following newspapers of general circulation:

   a. The Pittsburgh Legal Journal, on August 5, 2009; and

   b. The Pittsburgh Post-Gazette on August 4, 2009.

4. That the Debtor has provided proper notice of the sale pursuant to Section 363 of the Bankruptcy Code, F.R.B.P. Nos. 2002, 6004 and 6006 and GCP#3.

5. That at the sale hearing, no valid objection to the sale was sustained.

6. That in response to the offer made by Alex Development, LLC, additional bids were entered by Enterprise Bank and Frank Zokaites.

7. That after all bids were considered by the Debtor and the Court, it was determined by the Court that Frank Zokaites' offer of $1,405,000.00 was the highest and best offer, and, therefore, was found by the Court to be the successful bidder.

8. That the auction and sale were conducted in good faith and in accordance with In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986).

9. That the above-referenced sale is in the best interests of the creditors and the Debtor's estate.

NOW THERFORE, it is hereby:

ORDERED, ADJUDGED and DECREED that pursuant to 11 U.S.C. § 363(f), the Debtor may sell substantially all of its assets, both real and personal (the "Assets"), to Frank R.

Zokaites in accordance with, and consistent with, the terms of the Purchase & Sales Agreement attached hereto as Exhibit A (the "FZPSA"), free and clear of any liens, claims, and encumbrances for the total purchase price of One Million Four Hundred Five Thousand ($1,405,000) Dollars, and that the Debtors shall make, execute, and deliver to the purchaser the necessary documents required to transfer title to the property purchased upon compliance with the terms of the FZPSA, and that the Debtor is hereby authorized to take any and all actions as may be necessary or desirable to close; ** and it is further

ORDERED ADJUDGED and DECREED that the total purchase price of One Million Four Hundred Five Thousand ($1,405,000) Dollars shall be allocated as follows:

$ __1,250,450__ Real Property (as that term is defined in the FZPSA) and

$ __154,550__ Personalty (as that term is defined in the FZPSA); it is further

ORDERED, ADJUDGED and DECREED that the divested liens, claims, and encumbrances be transferred to the proceeds of the above-referenced sale, but only to the extent that they are valid, enforceable and unavoidable liens, claims, and encumbrances; and it is further

ORDERED, ADJUDGED and DECREED that at the time of the closing the following claims shall be paid:

a) All past due and current year pro-rated real estate taxes for the county, municipality, and school district;

b) CB Richard Ellis/Pittsburgh ("CBRE") shall be paid a commission of 6% on the sale of the Real Property, or $75,027.00 (the "Commission"). Pursuant to the FZPSA, CBRE has agreed to share the Commission with Coldwell Banker equally, or 3% each;

c) Leech Tishman Fuscaldo & Lampl, LLC ("LTFL") shall be reimbursed for their out of pocket advertising costs in the amount of One Thousand Five Hundred Twenty-Eight and 30/100 ($1,528.30) Dollars; and it is further

** This Order is entered over the objection (and/or without the consent) of Mr. Zokaites. The record of this case, however, is that Mr. Zokaites made an offer at the auction, and said offer was accepted by the debtor-in-possession and the Court. Mr. Zokaites is presently duty bound to complete the sale, and that is the essence of this Order.

ORDERED, ADJUDGED and DECREED that all remaining sale proceeds, including transfer tax (the "Escrowed Funds"), shall be held by Leech Tishman Fuscaldo & Lampl, LLC in an interest bearing account and subject to the following procedure:

- a) Within twenty days of the closing of the sale, the Debtor shall file a report of sale, including a proposed distribution of the Escrowed Funds (the "Report of Sale");

- b) The Report of Sale shall be served on all creditor, lien holders and parties in interest (the "Notice Parties");

- c) The Notice Parties shall have twenty (20) days to object to the Report of Sale; and

- d) If objections are made to the Report of Sale, this Court shall schedule a hearing to consider said objections;

- e) If no timely objections are raised to the Report of Sale, the Debtor is authorized to distribute the Escrowed Funds in the manner set forth in the Report of Sale; it is further

ORDERED, ADJUDGED and DECREED notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Order shall take effect immediately upon signature; and it is further

ORDERED, ADJUDGED and DECREED that this Order survives any dismissal or conversion of these bankruptcy cases.

BY THE COURT:

_____ 9-16-09
United States Bankruptcy Judge
**JEFFERY A. DELLER**

FILED

SEP 16 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

# PURCHASE & SALE AGREEMENT

THIS AGREEMENT made and entered into this _____ day of August, 2009 by and between Pittsburgh Irish Pubs hereinafter called "Seller"(s) and *Frank R Zokaites or related assigns* hereinafter called "Purchaser" or "Buyer".

**WITNESSETH:**

WHEREAS, Seller IS the owner in fee simple of a certain parcel or tract of land, Being lot and Block 141-F-38 with address of 660 Washington Road situated in the *Township of Mt. Lebanon* County of *Allegheny* and Commonwealth of Pennsylvania , 15228 and described in Exhibit "A" and annexed hereto and made a part hereof.(the "Real Property")

WHEREAS, Seller is the owner of certain personalty located on the Real Property and described in Exhibit "B" and annexed hereto and made a part hereof (the "Personalty" and together with the Real Property, the "Property" or "Premises").

NOW THEREFORE, in consideration of the premises, the promises and covenants hereinafter set forth, and the mutual advantages and benefits accruing hereunder, Seller hereby grants, bargains, and extends unto Purchaser, its successors and assigns, the right, privilege and option to purchase the Property for the consideration and subject to the terms and conditions hereinafter set forth:

1. **CONSIDERATION FOR PURCHASE**. The aforesaid agreement to purchase the Property is granted in consideration of the payment herewith of the sum of US ($20,000.00) Twenty Thousand Dollars, which sum, together with any additional sums paid for extensions of the purchase agreement is hereinafter called "Earnest Money," by deposit in escrow payable to the order of Seller, the receipt of which, subject to collection, is hereby acknowledged by Seller and held by its counsel, Leech Tishman Fuscaldo & Lampl, LLC ("LTFL").

2. **TERM OF AGREEMENT**. This Agreement shall begin on the date this Purchase Agreement is executed by both Seller and Purchaser and an order is entered by the Bankruptcy Court approving the Agreement (the "Effective Date") and shall extend for a period ending at midnight on the forty fifth (45th) day next following unless sooner exercised.

3. **PRICE AND TERMS OF PAYMENT**. If the Purchase Agreement herein granted is exercised, the price to be paid and accepted for the Real Property is US ($1,250,450.00_____) and the price for the Personalty is US ($154,550.00_____). The price to be paid and accepted shall be paid by certified check at the closing. All Earnest Money theretofore paid shall be credited toward the price to be paid by certified or cashier's check at the closing.

4. **EXERCISE OF PURCHASE AGREEMENT TO CLOSE**. Exercise of the

1 

Purchase Agreement herein granted shall be by written notice thereof given by Purchaser to Seller in the manner hereinafter provided during the term of this Purchase Agreement or any extension thereof.

5. **RENEWALS AND EXTENSIONS**. Deleted

6. **TIME AND PLACE OF CLOSING**. Upon timely and proper exercise of the Purchase Agreement as herein provided, the purchase and sale of the property shall be not less than thirty (30) days next following the date of the notice of exercise to close, in Pittsburgh at the offices of the Purchaser's attorney and on such date and time as Purchaser may designate in writing by notice to Seller.

7. **CLOSING**. At the closing.
   (a) Seller shall execute and deliver to Purchaser a General Warranty Deed in the form generally in use in *Allegheny* County conveying fee simple, merchantable title to the Real Property, free and clear of all liens, claims and encumbrances. Seller and Purchaser, if any incident to said deed of conveyance equally pay all revenue, documentary, and/or transfer stamps or taxes.
   (b) Purchaser shall deliver to Seller a check for the amount of the purchase price for the Real Property less all Earnest Money paid and subject to the adjustments specified in this Agreement.
   (c) Rents, utilities, and any municipal fees shall be pro-rated between Seller and Purchaser to the date of closing.
   (d) Seller shall deliver property free of all hazardous materials or wastes on or under the property.
   (e) Tenant security deposits shall be paid to Buyer at closing. To the extent the Seller is in possession of tenant security deposits, the tenant security deposit shall be paid to Buyer at closing. The Buyer acknowledges that the Seller has disclosed to the Buyer that Seller is not in possession of any tenant security deposits. Accordingly, the Buyer further acknowledges that the failure by the Seller to produce or pay over tenant security deposits at the time of the closing shall not constitute a breach of this Agreement.
   (f) Seller shall provide Buyer with a bill of sale in a form acceptable to Buyer conveying the Personalty to Purchaser free and clear of all liens claims and encumbrances.

8. **OTHER COVENANTS AND CONDITIONS**. It is further understood and agreed as follows:
   (a) Purchasers obligations hereunder are subject to conditions precedent below which must have been met or expressly waived in writing by Purchaser on or before the Closing Date or such earlier date as may be indicated.
      (i) Intentionally deleted.

(ii) Intentionally deleted

(iii) Purchaser's obtaining environmental Reports which are satisfactory for Purchaser's intended purpose. The environmental report shall provide Purchaser with evidence satisfactory to Purchaser and Purchaser's lender that no hazardous materials or wastes are located in, on or under the Property or are a potential source of contamination to the Property.

(iv) Purchaser's ability to extend lease terms satisfactory to buyer.

Seller agrees to fully cooperate with Purchaser in Purchaser's efforts to obtain the items set forth in paragraphs 8 (a) (i) through (iv) above. If the items listed in paragraphs 8 (a) (i) through (iv) above are pending, but have not been satisfied prior to the Closing, then the Purchase Agreement will be extended until the subject items have been obtained by Purchaser, with the Closing to occur not later than Thirty (30) days after all items set forth in paragraphs 8 (a) (i) through (iv) above have been satisfied. In the event the results of the items set forth in 8 (i) through (iv) above are not satisfactory to Purchaser the Purchaser shall have the right to terminate said contract and Seller shall return the earnest money and any extension deposits if applicable to the Purchaser.

(b) Seller's obligations and performance are conditioned upon Purchaser receiving all subdivision approvals necessary from the Municipality of Mt. Lebanon and/or County of Allegheny such that title may be properly transferred and Seller agrees to fully cooperate in Purchaser's efforts to obtain said approval. Seller agrees to pay for any and all costs incident or related in any way to Purchaser's obtaining said approvals, provided said costs are evidenced and reasonable.

(c) Seller represents that all city/county utilities are to the subject property (i.e., sewer, water, gas, and electricity) and capacity is available for Purchasers intended use.

(d) Purchaser shall pay the cost of the premium of title insurance; said title insurance may be in the amount of the purchase price plus the scheduled improvements.

(e) Seller represents and warrants that, there are no hazardous materials or wastes, as those terms are now or hereafter defined under applicable federal, state, and/or local laws, ordinances and regulations, stored or located in, on or under the Property, nor (to the best of Seller's knowledge) has the Property ever been used for manufacturing, storage or other purposes in which hazardous materials or wastes were involved. Seller has provided a copy of any Environmental Site Assessment Reports.

3

(f) Seller hereby represents and warrants that the Social Security Number or Federal Tax Identification Number of Seller set forth in Paragraph 18 of this Agreement is true and correct. Seller hereby agrees to indemnify, defend and hold Purchaser harmless from any loss, costs, expenses and damages, including reasonable attorneys' fees, which it may incur if said numbers are inaccurate or are omitted. The obligation of Seller to indemnify and hold Purchaser harmless set forth in this subsection shall survive the expiration or termination of the Agreement or the closing hereunder, as the case may be.

(g) Subject to bankruptcy court approval of this Agreement, Seller represents and warrants that Seller has good, marketable and indefeasible fee simple title to the premises, free and clear of all liens, conditions, exceptions or reservations, except those specifically approved by Purchaser pursuant to this agreement.

(h) There are no adverse or other parties in possession of the Premises, or of any part thereof, except Seller and the tenants under the leases set forth in exhibit "C" (the "Leases"). No party has been granted any license, Lease or other right relating to the use or possession of the Premises or any part thereof except for the tenants under the Leases. After the date of this Agreement, Seller will not without Purchaser's prior written approval enter into any further leases, contracts or other obligations relating to the Premises which will affect the Premises or bind Purchaser after the Closing.

(i) To the best of Seller's knowledge and belief, no facts or conditions exist which would result in the termination of the current access from the Premises to any currently existing highways and roads adjoining or situated on the Premises, or to any existing sewer or other utility facilities servicing adjoining situated on the Premises.

(j) To the best of Seller's knowledge and belief, the Premises are currently zoned under the zoning classification of " Commercial" If requested by Purchaser, Seller will cooperate and assist Purchaser in obtaining a change of such zoning classification to a zoning classification acceptable to Purchaser all at Purchaser's cost.

(k) Other than the claims that have been asserted in the Seller's bankruptcy, there is no pending or, threatened, litigation or governmental action which would adversely affect the value of the Premises to the Purchaser or the right of the Purchaser to acquire the Premises.

(l) There are no facts material to the use, and development of the Premises

which are actually known to Seller and which Seller has not disclosed to Purchaser.

(m) From and after the date of this Agreement, Seller shall keep the Premises free and clear of all easements, liens or encumbrances not disclosed in the Title Report. Seller shall keep current all existing loans affecting the Premises.

(n) Seller is not a "foreign person" as that term is used in Section 1445(b)(2) of the Internal Revenue Code of 1986, as amended, and the related regulations. Seller agrees to execute and deliver a Certification That Seller Is Not a Foreign Person prior to the Closing.

(o) Prior to the Closing Seller shall remove all personal property from the Premises, including, without limitation any underground and above ground tanks, drums and items consisting of hazardous materials, all asbestos, debris, trash and/or garbage and all other personal premises not included in the purchase and sale transaction contemplated hereby. Such removal shall be accomplished in compliance with all applicable laws and regulations including, without limitation, all environmental laws.

(p) Seller will provide Purchaser, within five (5) days after the Effective Date, with (a) the most recent appraisal of the Premises, if any, that Seller has in its possession, (b) copies of current utility statements, copies of any leases affecting the premises and all amendments, and (d) if Purchaser has executed this Agreement prior to receipt of any of the materials referred to above copies of all such materials shall be delivered to Purchaser.

(q) Seller will permit Purchaser and its representatives to have access to the Premises at all reasonable times upon reasonable notice prior to Closing.

(r) Seller hereby agrees to indemnify, defend and hold Purchaser harmless from any liability, loss, costs, expenses and damages, including reasonable attorneys' fees, resulting from the sale of the Property, which liability, loss, costs, expenses and damages, including reasonable attorneys' fees, are the direct result of the gross negligence or willful misconduct of the Seller, as to claims arising under existing rental or lease agreements between Seller and any existing tenant of parcels. The obligation of Seller to indemnify and hold Purchaser harmless set forth in this subsection shall survive the expiration or termination of the Agreement or the closing hereunder, as the case may be.

9. **FAILURE TO CLOSE OR OBSERVE TERMS OF AGREEMENT.**

(a) Seller shall be entitled to retain all Earnest Moneys paid hereunder in full satisfaction of any and all claims which Seller might have arising in any manner whatsoever out of this transaction, it being understood that in no event shall Purchaser's liability for failure to close be in excess of the Earnest Moneys paid hereunder.

(b) If after approval of this Agreement by the Bankruptcy Court, Seller shall refuse to close the purchase of the Property in accordance with the terms of this Agreement, or shall otherwise fail or refuse to observe and keep the terms of this Agreement, Purchaser shall have the right to elect to declare this Agreement canceled, in which event all Earnest Money's paid hereunder shall be refunded by Seller to Purchaser forthwith, or (ii) to elect to affirm this Agreement and enforce its specific performance or recover for its breach. Seller shall be liable for and agrees to pay all damages, costs and expenses incurred by Purchaser arising out of or in connection with or resulting from the failure or refusal of Seller to close the purchase and observe and keep the terms of this Agreement as aforesaid, including without limitation reasonable attorneys' fees.

10. **USE OF PROPERTY DURING PURCHASE AGREEMENT PERIOD.**
During the terms of this Purchase Agreement, or any extension thereof and at all times after its exercise, Purchaser shall have the right to go upon the property for the purpose of making engineering studies, surveys, test borings, and sub-surface inspections, provided, however, in the exercise of the rights herein given, Purchaser shall not unreasonably interfere with the use by Seller of the property, if same is being used, and further provided that Purchaser will at its expense repair any damage caused by its activities on the property.

11. **COAL NOTICE**: THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984). "Purchaser acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Purchaser agrees to sign the deed from Seller which deed will contain the aforesaid provision.

*12.   **RECORDING**. This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record and if Purchaser causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement and retain earnest money deposited.*

13.   **ASSIGNMENT**. This Agreement will be binding upon, enforceable by and inure to the benefit of, the parties, their respective heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Purchaser has the right to transfer or assign this agreement.

14.   **DEPOSIT & RECOVERY FUND**. The Earnest Money held by LTFL shall be held in accordance with Paragraph 9 of this Agreement.

15.   **MEDIATION**.   Subject to approval by the Bankruptcy Court, Purchaser and Seller understand that they may choose to mediate at a later date, should a dispute arise, but that there will be no obligation on that part of any party to do so. All parties agree that this Agreement shall be governed by the laws of the Commonwealth of Pennsylvania without regard to conflict of laws principles.

16.   **RISK OF LOSS**. Seller will bear risk of loss from fire or other casualties until time of settlement. In the event of damage by fire or other casualties to any property located in this sale that is not repaired or replaced prior to settlement, Purchaser will have the option of rescinding this Agreement and promptly receiving all monies paid on account of purchase price or of accepting the Property in its then condition together with the proceeds of any insurance recovery obtainable by Seller. Purchaser is hereby notified that Purchaser may insure Purchaser's equitable interest in this property as of the time of execution of this Agreement.

17.   **BROKER**.   CB Richard Ellis and Dana David of Coldwell Banker are the only brokers of record. Seller agrees to pay *3% of the sales price to each broker (total of 6%) as* commission at closing. Both Seller and Buyer confirm that no other agent or broker is involved with this sale.

18.   **NOTICES**. Any notice by either party hereto shall be in writing and shall be sent by Federal Express or United States Certified Mail, postage prepaid, addressed to the party being notified at the address which a party may from time to time hereinafter designate to the other in writing and shall be deemed to be given as of the date postmarked on the letter or the date of deposit. Notice addresses are as follows:

**SELLER:**

**Pittsburgh Irish Pubs**
**3745 W. Lake Road**

7

Erie, PA 16505
Tax ID # 20-0751701

**PURCHASER:**
Frank R Zokaites
375 Golfside Dr.
Wexford, Pa 15090

19. **NOTICE BEFORE SIGNING**: When signed by both parties, this is a legal contract. Purchaser and Seller acknowledge that they have read and understood the notices and explanatory information set forth in this Agreement. Purchaser acknowledges receiving a copy of this Agreement at the time of signing.

*IN WITNESS WHEREOF*, the parties have executed this Agreement the day and year this Agreement is executed by both parties listed above.

| WITNESS/ATTEST | SELLER/ Pittsburgh Irish Pubs |
|---|---|
| By: _____ | By: _____ |
| Date: _____ | T. COLM MCWILLIAMS |
| | Title: _____ |
| | Date: _____ |
| By: _____ | By: _____ |
| Date: _____ | |
| | Title: _____ |
| | Date: _____ |

| WITNESS/ATTEST | PURCHASER |
|---|---|
| By: _____ | By: _____ |
| Date: _____ | |
| | Title: _____ |
| | Date: _____ |

# EXHIBIT A TO PURCHASE AND SALE AGREEMENT

ALL that certain Unit 1A in the Civic Interest Manor Condominium, more particularly described as follows:

ALL that certain unit in the property known, named and identified in the Declaration Plan and Declaration of Condominium as "Civic Interest Manor Condominium", located on Washington Road, in the Municipality of Mt. Lebanon, County of Allegheny and Commonwealth of Pennsylvania, which has heretofor being submitted to the provisions of the Pennsylvania Uniform Condominium Act, 68 Pa. C.S.A. §3101, et. seq., as amended, by the recording in the Recorder's Office of Allegheny County, Pennsylvania the "Declaration Plan" recorded at Plan Book Volume 199, pages 105 to 112 and the "Declaration of Condominium" recorded at Deed Book Volume 9842, page 9, as more fully described in the said "Declaration Plan" and "Declaration of Condominium", together with a proportionate undivided interest in the common elements (as defined in the Declaration of Condominium) of 91.63%.

BEING the same premises which Civic Interest Associates, a general partnership, by deed dated November 14, 1996 and recorded in the Recorder's Office of Allegheny County, Pennsylvania in Deed Book Volume 9850, page 481 conveyed unto Civic Interest Associates, the grantor herein.

## EXHIBIT B TO PURCHASE AND SALE AGREEMENT

a. Furniture including entire bar;

b. Kitchen Equipment;

c. Lighting/Mirrors;

d. Mahogany Furniture;

e. Music System;

f. Phone System; and

g. POS System.

# EXHIBIT C TO PURCHASE AND SALE AGREEMENT

1. Lease Agreement Dated January 7, 2005 between Pittsburgh Irish Pubs, LLC and Molly Brannigans Pittsburgh, LLC

2. Lease Agreement Dated July 22, 2005 between Pittsburgh Irish Pubs, LLC and More Than Words, Design, Inc.

3. Lease Agreement Dated December 29, 2004 between Pittsburgh Irish Pubs, LLC and Associates in Dermatology, P.C.